Morning, Your Honors. May it please the Court. My name is Scott Redding. I represent the appellant, Oregon Mutual Insurance Company. I want to begin by talking about the test that is applicable to this case. The so-called predominating cause substantial factor test is just a label that some courts have used for the same test that has actually existed for decades. It is not a new test established by the Partridge case as represented by National General on page 4 of its brief. The Partridge case actually followed prior cases which concluded that the arising out-of-the-use language has a broad and comprehensive application and affords coverage for injuries during almost any causal relation with the vehicle. Partridge also pointed out that prior cases that found no coverage under an auto policy involved situations where there was absolutely no causal relationship between the act causing the injury and the use of the vehicle. Thus, Partridge did not establish a new test. And since Partridge, courts have applied the same test, however, they've just called the test by a different name. Courts have also further explained the test to make sure that consistent with the stated purpose of the test, auto policies are not converted into general language. Let me ask you this. If you just – I understand what you're saying about the standard that you've been reading there in those cases, but if you just go to the statute here for just a minute. Okay. Okay. So the statute defines the term use. Correct. When applied to a motor vehicle shall only mean operating. Correct. Maintaining. Correct. Loading or unloading a motor vehicle. That's correct. And then the other one, 11-580.1, says no policy of liability insurance described in Section 16-054 of the Vehicle Code covering liability arising out of ownership, maintenance, or use of any motor vehicle. Correct. Okay. So the dog is in the bed of the truck. Yes. Parked. What's the – is it just simply using the back of the bed of the truck as a place to house the dog? Is that the use? No, that is not the use, Your Honor. So what's the use of the truck? The use here is, remember, he left his house, loaded the dog into the back of the pickup truck for the purpose of transporting that dog wherever he was going. So this vehicle was specifically used to transport this vehicle. That was the entire purpose of the dog being in the vehicle. Well, was he transporting the dog to the vet, or was he, you know, his best buddy is just going along with him? Well, that's – the record doesn't indicate why he was transporting the dog, but we do know that he was, in fact, transporting the dog in the vehicle. The purpose of the dog – of the vehicle itself and the dog being there was so he could transport the dog. That was the purpose. And, remember, the language in the statute is arising out of the use, which includes operation. So he's operating his vehicle. He's got his dog in the vehicle because he's bringing the dog along with him to wherever he's going. In this case, he stopped at a deli to pick up a sandwich, and he was obviously continuing his journey elsewhere. Again, the record doesn't indicate where he was going at that point, but we know he was going somewhere. That wasn't his final destination. And so this incident happened – it arose out of him using this vehicle to transport his vehicle – to transport his dog. There's no other rational explanation for why he was – why the dog was in the back of the vehicle. I mean, if you take it a step further, there would literally be no scenario where a dog ever being in a vehicle would be covered under this policy. And that's clearly not the case. There are plenty of cases out there which have concluded that dogs being transported in a vehicle fit within the statutory language. So – Well, what do we do with the fact that the vehicle had arrived at a complete stop and was in the parking lot? Well, again, I think at that point we have to look at – And the injured person, the third party?  Collins. Mr. Collins. Walks up to the bed of the truck and leans over. Well, again, I think you have to look at the factual situation here. So the district court said, well, this was just merely the situs of the dog bite? That is what the district court said. And, again, I suppose you could make that argument with any time something happens in a vehicle, the vehicle which is to situs. But – In Juilliard, the dissent discusses the use of the vehicle as a cage, correct? Correct. All right. And you describe this third party's use, or not third party's, but the insured's use of the truck bed as a pen. I don't know if I described it as a pen, but that was where the dog was in the bed of the truck to be transported. That's the use, though, correct? Correct. There was reliance on the unfortunate Juilliard case. How would you distinguish this situation from the Juilliard case where the woman was in the car, and the car had been moved over there next to the fence where he was able to rape her, yet that was not considered to be in use of the vehicle? Correct. And the issue there, and I think I pointed this out in the briefs, was one of the factors you have to look at is the reasonable expectation of the insurer here. And it's pretty clear in the Juilliard case, and the court pointed it out in Juilliard, it's not reasonable for an insurer to expect that an auto policy is going to cover a rape in a vehicle. And so that's the difference there. On the other hand, in our case here, it's commonplace to transport household pets in vehicles. People do it. That's how they transport their pets, in particular in the back of a bed. Is it reasonable to expect that a dog is going to bite somebody's nose off? Well, again, if the dog is in the vehicle? Yeah. If the dog was in the vehicle and a bike rider rode by and bit the dog's nose off, then I think it would be the same situation we have here, assuming. No, I'm asking something different. Is it reasonable to expect that this kind of an injury could occur out of that, the fact that the dog is merely in the back of the pickup? Oh, I think it is, Your Honor, and it's happened in prior cases. And I think it's reasonable to expect, particularly if you have somebody who comes up to the bed of the vehicle, if you have a dog in the back of a vehicle and you have somebody that comes up and says something to the dog, I think it is reasonable to expect that the dog may react in a vicious manner. And that's what happened here. And I think that most— But would it be reasonable to expect that somebody would come up to the back of the pickup truck and say boo to the dog? That seems to be—that would be a very unusual situation. Well, that may be an unusual situation, but I think the focus here is on the expectations of a reasonable insured when it comes to transporting a vehicle, a dog in the back of a vehicle. I think that's the focus. This incident and this decision by this person obviously wasn't a smart decision, and I think a reasonable person wouldn't do that. But I don't think that's the—I don't think the focus is on the reasonableness of what this person did. I think the focus is on the reasonableness of an insured with an auto policy and whether if any type of incident happens with the dog in the vehicle, whether a reasonable insured would expect the auto policy to cover that incident. I think that's where the focus needs to be. The case law in other circuits and other states is somewhat more liberal than it is here in the State of California with respect to dog bites, and it appears to be an intention of the California legislature perhaps to limit the conversion of homeowners'— and typically dog bites are covered by homeowners' policies. Wouldn't you agree? Typically, outside of the auspices of being in a vehicle, I would agree with that. But if a dog is in a vehicle and an accident occurs while the dog is in the vehicle, I think that, again, that's something—it doesn't convert an auto policy into a general liability policy. You're actually using the automobile at that point. And so it's reasonable to expect that an auto policy is going to cover an incident when it happens within the auto. So any time you're transporting a dog and the dog bites somebody, the auto insurance company is liable? Well, no. I think there are— Where's the limit? I think the limit would be, for example—let me find the case here. The Kepler case cited by National General, which is the Iowa case. I think that's a perfect example where here's somebody who has their dog in their vehicle and drives to a flea market, parks, and literally uses—the vehicle itself is literally being used just to store the vehicle. There is no transportation involved. There's no use of the vehicle at that point. Store the dog, you mean? I'm sorry? Store the dog. Store the dog, yes. And so I think under that scenario, that's where you draw the line. Is this truly a, you know, kennel for the dog because you're off doing something else, or is the dog in the middle of being transported somewhere on a trip? Aren't those your facts here? I think those are the facts here, that the dog was loaded into the bed of the truck. These aren't the facts of the Kepler case, if that's what you asked. I think they're different here. The facts here are he loaded the dog into the vehicle, he drove to a deli, stopped there to get a sandwich, obviously came right back to continue his journey, and the incident just happened to occur when he was in the store. It wouldn't be any different if he was stopped at a red light, which is, again, another out-of-state case, one of the cases that we cited. The deal case, or the Transamerica case, was that same case where the person was stopped at a light, and someone was walking on the sidewalk, and the dog bit the person, and the court found that was use of the vehicle. So I think our case is more similar to that. There's no evidence here that this vehicle was just being used, in effect, as a kennel to house this dog. He was actually being driven around with Mr. Shaw. And I'd like to reserve the balance of my time.  Yes, I can. Okay, thank you. We'll hear from National General. May it please the Court. My name is Paul Loretto. I represent National General. The predominant factor, substantial factor, predominant cause is definitely an issue in this case, and that the law in Juilliard clearly points that out as the test, ultimately. Maybe Partridge didn't articulate how it would be applied, but the subsequent cases, especially Juilliard, which the district court relied on very heavily, did lay that out. They rejected the situation that it was any cause in fact, which basically is what Oregon is basically trying to argue, that it's just any cause in fact. The district court also looked at the Ohio Casualty case, which basically was a boat situation, but similar in that the issue of rising out of the use of the boat was involved. It was a platform for diving, and the court basically said that the platform had nothing to do with the incident. It was the negligent supervision, letting the child dive into the water that was the problem. We have the same situation here. I mean, the liability being imposed here, which illustrates the use issue, is basically California dog bite statute negligent supervision. There's absolutely no relationship with the vehicle to impose liability. Now, there was no exclusion from this dog bite. Excuse me? There was no exclusion in this auto insurance policy for dog bites, right? That's correct. There was no exclusion. So, you know, if you pal around with your dog in the back of your car and you're driving around and you stop at a stop sign and your dog bites somebody, comes up to the truck, like the one Casey was citing, why wouldn't you reasonably think that you would be covered? Well, one is the vehicle was parked here. So that's what's the key thing, is it was parked? Well, that's an important factor. Does it make a difference if it was parked for overnight or for an hour or for, I don't know how long he was away from the car, 20 minutes getting a sandwich? The time probably wouldn't matter. The fact that it was parked, the vehicle was not in operation, certainly is a different case than if it was moving in traffic. And that might even be harder for someone to come up and walk and look into the bed. But certainly the vehicle was, you know, in the use of the vehicle. Here the vehicle is essentially acting as a pen or a cage if you want to put it that way. Suppose he was in the parking lot talking on his cell phone, the car was running and the dog was in the bed of the truck, and somebody comes up and, you know, tries to pet the dog and the dog. I don't think that would still make a difference. That covered or not covered? I think it would not be covered. Not be covered. But he was using the truck. He was just sitting there talking on his phone. The issue, too, is the truck has to be a substantial, predominant cause, substantial factor. I mean, there's no real causal relationship between the truck causing the injury. When you have a dog in the vehicle and you have a passenger in the vehicle that you invited into the vehicle and you're driving along, the passenger just can't get away from the dog. Here we have a pedestrian who walks up voluntarily to a dog, which appears to be essentially the same as a cage or a pen if you want to look at it like that. If you had taken that cage and put it on the ground, say you had dropped the cage off there and left the truck and someone walked up, Mr. Collins walked up, stuck his head over the cage and got bit, the liability would be basically the same for the owner because the dog bite statute negligent supervision would apply. The truck had nothing to do with the prior situation, just like the pen itself would have nothing to do with the subsequent situation. It's the leaving of the dog unattended in a public place that is the main thrust of the liability here. So that's... Wasn't this dog left unattended in a public place? He was left unattended in a public place, and that's basically negligent supervision of a dog, which is a liability issue. Otherwise, it converts the liability, the homeowner's policy, the auto policy into a liability policy. As Julie R. pointed out, it's merely the situs that... And isn't that the purpose of purchasing insurance, to cover you when you're liable for something? That's correct, Your Honor. And he did, the insurer here did purchase insurance. He purchased an auto policy to cover him for auto accidents, and he purchased a homeowner's policy to cover him for general liability. And he was covered for the general liability, and this is an issue of which policy should be the predominant policy. The insurer is protected here because he had liability coverage, and the issue is which liability coverage is the correct one for this situation. Is it the auto policy, in a situation where an auto has something to do with it, where it arises out of the use of the auto, or is it a homeowner's policy, where the auto has no... It's not a predominant cause or a substantial factor in the injury, which is... It's an exclusion in this auto policy for coverage for a dog bite, correct? That's correct, Your Honor. Okay. And in a homeowner's policy, if you set your dog in the front yard and some little child's walking by, and that dog's unrestrained and that dog bites, that home is merely the site of the injury, correct? The home is the site of the injury. Okay. And in this instance, this truck, this open bed truck with this unrestrained dog is merely the site of the injury. Why aren't they analogous situations? Why is that an unreasonable interpretation? Well, our position, Your Honor, is that it is a reasonable situation because the vehicle here had nothing to do with it. Just like it's the dog bite, the unsupervised dog, that's the key. It's got nothing to do with the automobile. And that shows that it's not covered under the automobile policy because it's not the auto, it's the supervision that's the key. And it doesn't matter where the dog is. If it's at home and unrestrained, the homeowner's policy covers it. If he's walking the dog... It's not the home's fault at that point, right? Excuse me, Your Honor? It's not the home's fault. That's correct, Your Honor. It's the owner's fault for not properly keeping the dog away from people. And there's, you know, the dog bite statute is cited in the papers, except for there's an exception for postal workers. But basically, the liability is the dog supervision and the dog bite statute. Okay. Thank you. And as a result, the fact that if you move the situs around, it shows that the situs is the situation where it happened here, just happened to be in the vehicle. So under Julie R., the key is that if it's merely the situs, that doesn't establish coverage. Is the term arising out of the use? In the case law, doesn't that have a fairly broad reading, a meaning? It's generally interpreted fairly broadly. However, as the district court pointed out as well, it's not unlimited. Right. And it would be broad. And there are cases that are cited, like that egg case where the vehicle was moving along and the person threw the egg out. The velocity of the vehicle added to the injury because of the movement of the vehicle. So in that case, the court took the arising out of and said it did arise out of the use of the vehicle when it applied the broad interpretation. But here, we just have a situs. And that is, according to the district court and Julie R. case, going too far. That would then convert the policy from an auto policy into a general liability policy, which is not the case. So therefore, for these reasons, Your Honor, I submit that the district court was correct in its decision relying on Julie R. and some degree on the Ohio Casualty case, along with the previous cases, Partridge, and that the ruling that the dog bite in this under these specific facts did not arise out of the use of the vehicle is a correct one. Thank you. Thank you. That is the real issue in this case, is whether this was the mere situs or whether there's a true causal connection here between the injury and the auto. Because certainly there is coverage. There's a scenario where there's going to be coverage for a dog causing an injury in a vehicle. And so the causal connection here seems to be the issue. And clearly, in Oregon Mutual's opinion, you know, the vehicle was actually being used to transport the dog here. It was the design of the vehicle, the type of vehicle, the fact that it had a bed. All those things contributed to the fact that this dog was able to cause this injury. In Oregon Mutual's position, that is a sufficient causal connection. It doesn't mean that it was just the mere situs, whatever that means. And so this Court should look at the – if there truly is a causal connection here, and Oregon Mutual contends that there is. And I just want to point out, National General relied on and cited again today the Ohio casualty case. And there's a big distinction in that case. That case involved somebody diving off of a boat into the water. Once that person was in the water, he was struck by another boat. So the facts aren't in any way similar to this case. The injury didn't occur in any way on the boat. The boat was out of the picture at that point. And so analogizing that case to the facts we have here just isn't appropriate. So if the dog had just jumped out of the vehicle? I think there's the distinction. And then bit a passerby. That's the Grisham case. The dogs jumped out of the vehicle, ran 20 to 25 yards, and bit somebody. And in that case, the Court found that the dogs had sufficiently unloaded themselves from the vehicle. Because remember, loading and unloading is also included within the definition of use. And so once the unloading occurred at that point, then there would not be coverage. And that's the line of distinction that has to be made. Here the dog was loaded. It was never unloaded from the vehicle in this case. Am I correct that this dog was unrestrained in the back in a flatbed pickup truck? You are correct, yes. I believe that's what the facts show here. So, again, it wasn't unloaded. And, again, that differentiates. There's a couple cases. In fact, there's, I don't recall the name of it, but where a child exited a vehicle and started crossing the street and got hit by a vehicle. And in that case, the Court actually found the child was still in the process of unloading itself and found that there was coverage. And so there is a line once the unloading starts. But we don't even get there in this case because the dog was still in the bed of the truck. So unless the Court has any other questions, I would submit on that. Thank you. Thank you very much, counsel. Thank you. Interesting case. Thank you for your arguments.  And the case is submitted and we're going to move on.
judges: Watson, Hug, Paez